**INTERSTATE TRAFFIC CONTROL, Plaintiff,**

v.

**Samuel H. BEVERAGE,[1] et al., Defendants.**

No. 2:98–0962.

United States District Court, S.D. West Virginia, Charleston Division.

June 22, 2000.

---

1. Samuel H. Beverage has replaced Samuel G. Bonasso as Secretary, West Virginia Department of Transportation (WVDOT). Pursuant to Fed.R.Civ.P. 25(d)(1), the Court substitutes Beverage for Bonasso in the style of this case. Beverage also remains Commissioner, West Virginia Division of Highways (WVDOH).

Norman T. Daniels, Jr., Shawn R. Romano, Charles R. Ford, Daniels Law Firm, Charleston, WV, for plaintiff.

Anthony G. Halkias, Jeff Miller, WV Division of Highways—Legal Division, Charleston, WV, for State defendants.

Stephen M. Horn, Assistant U.S. Attorney, Rebecca A. Betts, United States Attorney, Southern District of W.Va., Charleston, WV, Nancy E. McFadden, General Counsel, Paul M. Geier, Assistant General Counsel, Edward V.A. Kussy, Deputy Chief Counsel, U.S. Dept. Of Transportation, Federal Highway Administration, Washington, DC, Richard S. Ugelow, Janie Allison Sitton, Diana Saldona, Bill Lann Lee, Acting Assistant AG, Meredith L. Burrell U.S. Department of Justice, Civil Rights Division, Washington, DC, for Federal defendants.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is a motion to dismiss for lack of standing[2] by Defendants United States Department of Transportation (USDOT) and Secretary Rodney E. Slater (together "Federal Defendants"). The State Defendants[3] join the Federal Defendants' motion. Plaintiff also moves to file a supplemental response, a motion Defendants oppose. For reasons discussed below, the Court **GRANTS** Plaintiff's motion to supplement and, having considering all briefing including the supplemental affidavit, **GRANTS** Defendants' motion to dismiss this action because Plaintiff lacks standing to litigate this issue.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Interstate Traffic Control (Interstate) provides traffic control on highway construction projects. When this action was filed, Interstate was owned by Charles M. Skeens, a white male. Since that time, Interstate was purchased by National Equipment Services, Inc. (NES), a publicly held corporation. (See Stipulations ¶¶ 1, 2.)[4] NES acquired Interstate for twelve million dollars on August 2, 1999. (See Mem. of P. & A. in Supp. of Federal Defs.' Mot. to Dismiss (Defs.' Br.), Ex. A.) Skeens continues to control Interstate.[5] His personal net worth in May 1998 exceeded $4.5 million. See id. at Ex. B.

Interstate challenges the constitutionality of the USDOT's Disadvantaged Business Enterprise (DBE) program, under which socially and economically disadvantaged businesses receive at least ten percent of federally-funded or federally-assisted highway construction funds. Interstate argues WVDOT's administration of the DBE program violates its right to equal protection. Specifically, Interstate alleges it is prevented from equal participation in the award of federally-assisted highway

2. Alternatively, the Federal Defendants move for summary judgment. See discussion infra II.C.2.

3. The State Defendants are: Samuel H. Beverage, Secretary, WVDOT, and Commissioner, WVDOH; and WVDOH.

4. The parties have filed stipulations solely to provide a factual basis for the Court's decision on the motion to dismiss. Documents attached in support of the motion, and undisputed by an opposing party, are cited by the Court only to "flesh out" the description of the entities involved. In deciding the motion, the Court relies on the bare-bones stipulations.

5. Defendants assert Skeens' continuing control, a premise Plaintiff does not dispute. Absent Skeens' control of Interstate, the discriminatory allegations in Plaintiff's complaint have no factual foundation.

construction contracts because of the race, gender, and/or national origin of its owner.

In February 1999 Plaintiff moved for a preliminary injunction to enjoin operation of the DBE program by WVDOT and/or WVDOH. By Order of February 22, 1999, the Court denied injunctive relief, finding Plaintiff had not demonstrated that awarding further highway construction contracts involving the DBE program would produce irreparable harm to Interstate. Rather, the Court found the company was so competitive and successful it probably could not meet the economic disadvantage requirements to qualify for the DBE program. *See Interstate v. Bonasso*, No. 2:98–0962 (S.D.W.Va. Feb. 22, 1999).[6]

After engaging in limited written discovery, the parties agreed to suspend discovery and brief the issue of Interstate's standing to maintain this action based on jointly submitted stipulations. Briefing is now complete and Defendants' motion to dismiss for lack of standing is ripe for decision.

## II. DISCUSSION

### A. The DBE Program

For many years the USDOT has administered a Congressionally-established DBE

program to expend, except to the extent the Secretary otherwise determines, "not less than 10 percent of the amounts made available" for certain federal highway programs on "small business concerns owned and controlled by socially and economically disadvantaged individuals." Pub.L. No. 105–178 § 1101(b), 112 Stat. 107, 113–115 (1998) (TEA–21).[7] As a recipient of federal-aid highway funds under certain titles of ISTEA and TEA–21, the State Defendants are required to maintain an approved DBE program. *See* 49 C.F.R. §§ 26.3, 26.21(a)(1) (1999). Failure to comply with DBE program requirements can result in loss of federal funds. *See id.* § 26.101(a).[8]

Businesses eligible for DBE status must be 1) "small," *see* TEA–21 § 1101(b)(2)(A) (stating no entity may qualify as DBE "which has average annual gross receipts over the preceding 3 fiscal years in excess of $16,600,000, as adjusted by the Secretary for inflation") and 2) "owned and controlled by socially and economically disadvantaged individuals," *see id.* § 1101(b)(1).

TEA–21 and its predecessor statutes define "socially and economically disadvantaged" in accord with section 8(d) of the Small Business Act, 15 U.S.C. § 637(d), and relevant subcontracting regulations.[9]

---

6. The Court also found new regulations promulgated by USDOT, purporting to address the constitutional frailties of the DBE program identified in *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995), were to be adopted by WVDOT by August 31, 1999. The Court declined to order Defendants to do that which they had agreed to do and were required by law to perform. *See Interstate*, No. 2:98–0962.

7. The current statute embodying the DBE program is "TEA–21," the Transportation Equity Act for the 21st Century. The predecessor statutes to TEA–21 are the Intermodal Surface Transportation Efficiency Act of 1991 (ISTEA), Pub.L. No. 102–240, § 1003(b), 105 Stat.1919–1921 (codified at 23 U.S.C. § 101 et. seq.), and the Surface Transportation and Uniform Relocation Assistance Act of 1987, (STURAA), Pub.L. No. 100–17, 101 Stat. 132 (codified at 23 U.S.C. § 106(c)).

8. No sanctions apply to recipients prevented from complying by the final order of a Federal court finding the requirement unconstitutional. 49 C.F.R. § 26.101(b).

9. "Socially disadvantaged individuals are those who have been subjected to racial or ethnic prejudice or cultural bias within American society because of their identities as members of groups and without regard to their individual qualities. The social disadvantage must stem from circumstances beyond their control." 13 C.F.R. § 124.103(a) (2000).

"Economically disadvantaged individuals are socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same or similar line of business who are not socially disadvantaged." *Id.* § 124.104(a).

*See id.* § 1101(b)(2)(B). Only firms that are at least fifty-one percent owned and controlled by one or more socially and economically disadvantaged individuals may be certified as DBEs. *See* 49 C.F.R. § 26.5. Thus, firms that are owned by other firms, rather than individuals, may not become certified DBEs. *See id.* § 26.73(e).

In determining eligibility for DBE status, applicants who are women, Black Americans, Hispanic Americans, Native Americans, Asian–Pacific Americans, Subcontinent Asian Americans, or other minorities found to be disadvantaged by the Small Business Administration are rebuttably presumed to be socially and economically disadvantaged. *See id.* § 26.67(a). Nevertheless, such applicants must submit a signed, notarized certification that each presumptively disadvantaged owner is, in fact, socially and economically disadvantaged. *See id.* Business owners applying for DBE status must also submit a signed, notarized statement of personal net worth, with appropriate supporting documentation. *See id.* § 26.67(2)(i). Regardless of presumptive social disadvantage, if a business owner's personal net worth exceeds $750,000, the individual is no longer eligible to participate in the DBE program. *See id.* § 26.67(b)(4). Individuals who do not enjoy the rebuttable presumption of social disadvantage must prove their social and economic disadvantage by a preponderance of the evidence. *See id.* § 26.67(d).

### B. It is uncontested Interstate is not eligible for DBE status

For purposes of the instant motion, the parties jointly stipulate that neither Interstate nor NES is a "small business," so as to be eligible for the DBE program. (*See* Stipulations ¶¶ 7, 8.) Neither Interstate nor NES is owned or controlled by "socially and economically disadvantaged individuals." (*Id.* ¶¶ 5, 6.) Neither Interstate, Charles Skeens, nor NES meet the economic disadvantage requirements for participation in the DBE program.[10] (*See id.* ¶¶ 9, 10, 12.) Not only do Interstate and its owners meet none of the requirements for DBE status, but Interstate also cannot be DBE-certified because it is owned by another firm rather than by socially and economically disadvantaged individuals. (*See id.* ¶ 11).

### C. Interstate's Standing to Challenge the Constitutionality of USDOT's DBE Program

#### 1. Evidentiary standard

■ Because the parties present evidence outside the scope of the pleadings, Defendants invite the Court to apply the summary judgment standard to their motion to dismiss for lack of standing. (*See* Defs.' Br. at 1; Federal Defs.' Reply at 9, n. 4.) That standard, going to the merits of the action, is inappropriate. *See* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure Civ.2d* § 1350 (2000). A motion to dismiss for lack of standing challenges a plaintiff's claim to federal jurisdiction and is, thus, a *Rule* 12(b)(1) motion. *See id.* Parties may use affidavits and other extra-pleading material to support such a motion. *See id.* In deciding the motion, "the complaint is construed broadly and liberally," but "argumentative inferences favorable to the pleader" are not drawn. *Id.* Accordingly, the Court considers the complaint, the parties' joint stipulations, and other materials submitted to the extent they support or elucidate the stipulations.

#### 2. Elements of standing

■ Whether plaintiff has standing to sue is a threshold jurisdictional question. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101, 118 S.Ct. 1003, 140

---

**10.** NES's average annual gross receipts have exceeded 16.6 million dollars for the past three years. Interstate's average annual gross receipts have exceeded five million dollars for the past three years. Charles Skeens has a personal net worth in excess of $750,000. (*See* Stipulations ¶¶ 9, 10, 12.)

L.Ed.2d 210 (1998). Under Article III, Section 2 of the Constitution, federal judicial power extends only to cases and controversies. *See id.* The "irreducible constitutional minimum of standing" contains three requirements. *Id.* (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). There must be alleged (and ultimately proven) (1) an "injury in fact,"—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical; (2) causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant; and (3) redressability—a likelihood that the requested relief will redress the alleged injury. *See id.* The party invoking federal jurisdiction bears the burden of establishing this case-or-controversy standing requirement. *See id.*

### a. Injury-in-fact

 In the context of a set-aside program, the Court has explained further the injury-in-fact is "the inability to compete on an equal footing in the bidding process, not the loss of a contract." *Northeastern Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville,* 508 U.S. 656, 666, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993).

Defendants argue Interstate cannot demonstrate injury-in-fact, causation or redressability because its alleged injury is not due to race, gender or national origin, but simply to Interstate's failure to meet the business size and financial preconditions for DBE eligibility. *See* Defs.' Br. at 9 (citing *SRS Technologies, Inc. v. United States Dep't of Defense,* No. 95–1792–A (E.D.Va. Feb. 22, 1996)), *aff'd,* No. 96–1494, 1997 WL 225979 at *1 (4th Cir. May 6, 1997) (plaintiff who fails to qualify for a contract award due to a race-neutral crite-

rion lacks standing to challenge the race-conscious criteria); *Wilson v. Glenwood Intermountain Properties,* 98 F.3d 590, 593 (10th Cir.1996) ("[A] person who fails to satisfy lawful nondiscriminatory requirements or qualifications for the benefit lacks standing to raise claims of discrimination in the denial of the benefit.").

If Interstate relied simply on its inability to be certified as a DBE as the ostensible injury, *SRS* and *Wilson* would be dispositive. It is undisputed Interstate does not qualify as a DBE because of wealth and prosperity of its owners, the success of the business, and its recent acquisition by another firm. Because Interstate meets none of the economic and financial criteria for DBE certification, race, gender or national origin are all irrelevant to the inquiry. For race-neutral reasons, Interstate is ineligible to be a DBE and therefore lacks standing to challenge the rebuttable presumptions enjoyed by certain applicants to the program.

To avoid this barrier, Interstate offers an injury-in-fact more broadly conceived. In its Complaint, Interstate alleges it submitted the low subcontractor bid for traffic control on five federally-assisted highway construction projects, but the prime contractor employed a DBE instead, in order to fulfill the DBE requirements of the project specifications, which ranged from ten to fifteen percent. (*See* Am.Compl. ¶¶ 27–86.) Interstate's alleged injury is lost business, the failure to receive contracts on which it was the low bidder, not because it could not be certified as a DBE, but because of the very existence of the DBE program.[11]

 "When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group,"

---

11. Interstate suggests this analysis in its briefing. (*See* Pl.'s Resp. to Defs.' Mot. to Dismiss at 11, 14, 15.) The Amended Complaint also may be construed to support this claim: "[Defendants'] denying [to] Plaintiff Interstate and other Caucasian male contractors simi-

larly situated, on account of their race, gender, and/or national origin, the right to participate on federal-aid highway projects in West Virginia, constitutes a denial [of their rights to equal protection under the laws]." Am. Compl. ¶ 10.

the injury-in-fact "is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Northeastern*, 508 U.S. at 666, 113 S.Ct. 2297. In *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978), a decision the Court found "most closely analogous" to *Northeastern*, a white male challenged the medical school program reserving 16 of 100 places for minority applicants. The Court found Bakke had standing to challenge the program. His injury-in-fact was the school's "decision not to permit Bakke to compete for all 100 places in the class." *Id.* at 281 n. 14, 98 S.Ct. 2733. Similarly, Interstate is prevented by the DBE set-aside program from competing for 100% of the biddable traffic control work. In *Northeastern*'s terms, the "barrier" imposed is the allegedly unconstitutional DBE program itself, and the "benefit" lost is whatever portion of the work DBE firms obtain.[12]

■ Interstate's lost contracts are concrete and actual, not hypothetical or conjectural. The similar loss of future contracts is likely, given continuing application of the DBE program in West Virginia on all federally-funded and -assisted state highway construction projects and the likelihood Interstate will continue to bid on those projects. (*See* Stipulations ¶¶ 15, 17, 18.) Thus, Interstate demonstrates an injury-in-fact.

### b. Causation and redressability

■ Having demonstrated an injury-in-fact, the inability to compete on equal footing for 100% of highway projects, Interstate must demonstrate "a causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130. Plaintiff must show its injury is "fairly traceable" to the allegedly unconstitutional gender, race, and/or national origin preferences. *Steel Co.*, 523 U.S. at 103, 118 S.Ct. 1003. Interstate must also show the relief sought—the elimination of the preferences—will provide redress for the injury claimed. *See Lujan*, 504 U.S. 555 at 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351. Traceability and redressability are "two sides of a causation coin." *Dynalantic Corp. v. Department of Defense*, 115 F.3d 1012, 1017 (D.C.Cir. 1997).

Interstate could not compete for 100% of the traffic control contracts because the DBE program allots not less than 10% of the highway construction funds to socially and economically disadvantaged small businesses and Interstate suffers neither type of disadvantage. Interstate argues unconstitutional reliance on race, gender and/or national origin underly the DBE program, causing its injury. Analysis of the role of the rebuttable presumption of social disadvantage, partially based on suspect characteristics, in the DBE program, however, demonstrates no necessary causal connection.

As described above, certain groups are rebuttably presumed to be socially disadvantaged, although others might also qualify. (One possible qualifying candidate who lacks the presumption is a white, Appalachian male, suffering cultural bias from being identified as a "red neck," "hillbilly," and "holler homeboy.") All applicants, though presumptively disadvantaged, must still certify in a notarized statement, which would be subject to penalties for perjury, that they are socially

---

**12.** Defendants' incorrectly rely on *SRS* for the proposition a plaintiff who does not meet a race-neutral criterion for a benefit necessarily lacks all three elements of standing to challenge the benefit. Like Interstate, the plaintiff in *SRS* was ineligible for SBA 8(a) status because its owner was too wealthy. Our Court of Appeals found SRS lacked standing because he could not demonstrate a causal connection, *SRS*, 1997 WL 225979 at *1, without analyzing whether SRS had suffered an injury-in-fact.

While Bakke's injury-in-fact was the inability to compete for every entry slot in the school, he had standing because, additionally, the inability was "simply *because* of his race." *Bakke*, 438 U.S. at 281 n. 14, 98 S.Ct. 2733 (emphasis added).

and economically disadvantaged. Similarly, they must certify their personal worth. Apart from proof or presumption of disadvantage, all applicants must prove by a preponderance of the evidence business size, ownership and control.

In *Cache Valley Electric Co. v. State of Utah Department of Transportation*, 149 F.3d 1119 (10th Cir.1998), an electrical subcontractor (CVE) sought to enjoin, on equal protection grounds, operation of a DBE program. Like Interstate, CVE's owners were not presumptively disadvantaged nor did the company meet the economic and financial criteria. The court found, similar to the analysis above, the plaintiff had suffered an injury-in-fact. *See id.* at 1122 n. 2 (acknowledging plaintiff's position "its injury is attributable to the DBE program and not to its inability to participate in that program").

Accepting *arguendo* CVE had demonstrated causation, the court found it would be "pure speculation" to conclude that invalidating the allegedly unconstitutional preferences would ameliorate plaintiff's ability to compete in any way. *Id.* The court first examined severability of the allegedly unconstitutional provision. "Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *Buckley v. Valeo*, 424 U.S. 1, 108, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). The basic intent of the operative statute is to foster growth in small businesses owned by "socially and economically disadvantaged" people. A small business may qualify as socially and economically disadvantaged in two ways: by relying on the race- or gender-based presumption of disadvantage (with additional certification) or by satisfying the race- and gender-neutral criteria. *See Cache Valley*, 149 F.3d at 1123 (citing 15 U.S.C. §§ 637(a)(5), 637(a)(6)(A)). Like this Court, the *Cache Valley* court also concluded there was no basis to a claim that socially and economically disadvantaged individuals are necessarily minorities. *See id.* The legislative intent "to foster development in small businesses whose owners have had to overcome social and economic hardship would remain even in the absence of the challenged presumption." *Id.* at 1123–24.

Because the allegedly unconstitutional presumption is severable from the remainder of the DBE program, small business owners who could prove they were socially and economically disadvantaged would continue to gain the benefit of at least a ten percent segment of the highway construction market. The *Cache Valley* court then turned to the question whether elimination of the presumption might nevertheless result in a meaningful reduction in the number of DBEs. Without analysis, the court assumed this question was a demonstrable question of fact and, because it occurred in *Cache Valley* at the summary judgment stage, plaintiff CVE's lack of evidence on the issue was dispositive.

■ To demonstrate standing, Interstate must confront the identical problem. A bare minimum showing would be that the practical effect of eliminating the presumption would result in some meaningful reduction in the number of DBEs against which it would be forced to compete.[13] A

---

**13.** As previously noted, Interstate moves to supplement the briefing by submitting an affidavit of "Mike" Skeens, who avers he is President of Interstate Traffic Control, Inc. (*See* Pl.'s Mot. for Leave to File Supp. Response, Aff. ¶ 1.) The Court assumes he is the same individual as Charles M. Skeens, previously identified as Interstate's president.

Skeens' affidavit, rather than presenting facts of which affiant has personal knowledge, proposes Interstate be allowed to "conduct discovery on the issue of redressability." *Id.* ¶ 6. Specifically, affiant requests discovery on whether the DBE program is severable and whether there would be a substantial reduction in the number of DBE-certified businesses if race- and gender-based considerations were withdrawn. *See id.*

Severability of the program is a question of law on which discovery is inappropriate. *Cache Valley* correctly analyzes and disposes of the question. Because, as discussed *infra*,

presumption of fact is "an inference affirmative or disaffirmative of the truth or falsehood of any proposition or fact drawn by a process of probable reasoning in the absence of actual certainty of its truth or falsehood, or until such certainty can be ascertained." *Black's Law Dictionary* (1957). Under DBE regulations, the presumptive truth of disadvantage is then confirmed by dual certifications as to disadvantage and personal net worth.

Having carefully considered the DBE eligibility determination process, the only way the Court can see that the rebuttable presumption of disadvantage could cause Interstate's injury would be if there were fraud in the program. Applicants presumed disadvantaged, but not, must be fraudulently certifying disadvantage and fraudulently misrepresenting their net worth. Interstate has made no allegations of fraud at all, much less with the particularity required by *Fed.R.Civ.P.* 9(b). Assuming the particularity in pleading obstacle could be surmounted, then the additional burden of the good faith assertion, required by *Rule* 11, would have to be confronted.

Another way to conceptualize the point is to consider redressability. Absent fraud, removing the complained-of conduct, the allegedly unconstitutional rebuttable presumption, from the application process would not alter the number or identity of socially and economically disadvantaged individuals eligible to participate in DBE. If applicants are truthfully certifying social and economic disadvantage, the evidence would support those claims and the DBE program impact would continue unaltered. Where Plaintiff's injury-in-fact is the very existence of the DBE program, removal of the severable presumption would not alter its existence or, absent undetected fraud, diminish the number of eligible participants.

Interstate has failed to show that the presumption of disadvantage enjoyed by certain minorities under the DBE program is causally related to its alleged injury-in-fact, the inability to compete on an equal footing for 100% of the federally-assisted state highway construction traffic control work. Nor has Interstate demonstrated that removal of the presumption would redress that injury. In the absence of allegations and proof of fraud by DBE program applicants subject to the disadvantage presumption, it would be pure speculation for the Court to conclude that judicial removal of the presumption would diminish the number of DBE program eligible participants. Accordingly, Interstate lacks standing to challenge the constitutionality of the DBE program.

## III. CONCLUSION

Plaintiff's motion for supplemental briefing is **GRANTED;** however, after consideration of the attached affidavit, Plaintiff's implicit motion to re-open discovery on the issue of redressability is **DENIED.** Defendants' motion to dismiss this civil action for Plaintiff's lack of standing is **GRANTED.**

The Clerk is directed to send a copy of this Order to counsel of record.

the Court finds and concludes applicants' certification of disadvantage affirms the truth of the rebuttable presumption, absent allegations of fraud, discovery on the question of substantial reduction is similarly inappropriate.

Finally, the Court notes the parties agreed to suspend discovery, which had been ongoing since February 1999, and submit the question of standing on their joint stipula-

tions. Redressability is merely an element of standing. In its motion to supplement and attached affidavit, Plaintiff proposes no particular line of inquiry or specific information to be discovered. Accordingly, the Court **GRANTS** Plaintiff's motion to supplement and, having considered the proffered affidavit, **DENIES** its implicit motion to re-open discovery on redressability.